**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSLYN OVERBY, on behalf of herself and all others similarly situated, | ) ) | CASE NO.: 5:24-cv-01753-BYP |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| vs. | ) | |
| | ) | |
| THE STEP2 COMPANY, LLC, | ) | **JOINT MOTION FOR APPROVAL** |
| | ) | **OF SETTLEMENT AND** |
| Defendant. | ) | **STIPULATION OF DISMISSAL WITH** |
| | ) | **PREJUDICE** |

## I.  __INTRODUCTION__

Plaintiff Roslyn Overby and Defendant The Step2 Company, LLC ("Defendant" or "Step2") (collectively "Parties") respectfully move this Court to approve the proposed FLSA Opt-in Settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Agreement") attached as Exhibit A.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes.  Plaintiff asserted that Defendant unlawfully failed to include bonuses and pay differentials earned by Plaintiff and other similarly situated employees in their regular rate of pay for purposes of calculating their overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03..

If approved by the Court, the Agreement will provide for the issuance of notice to all Eligible Settlement Participants[1] within 30 business days of approval by this Court.  Eligible Settlement Participants will have forty-five days to join the Settlement by executing and returning Consent and Release Forms to Plaintiff's Counsel.  Because the proposed Settlement is an FLSA *opt-in* settlement, no fairness hearing is required or requested by the Parties.[2]

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Agreement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and with the assistance of a highly respected mediator.  If approved by the Court, the Agreement will make settlement payments available to the Eligible Settlement Participants who elect to participate in the settlement.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A:   Joint Stipulation of Settlement and Release

Exhibit B:   Notice of Settlement of Lawsuit, with attached Consent and Release Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims

Exhibit C:   Order of Dismissal with Prejudice and Approving Settlement

Exhibit D:   Declaration of Counsel Chastity L. Christy

---

[1] All defined terms not explicitly defined herein shall have the meaning ascribed to them in the Agreement.

[2] *See Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

The following sections explain the nature of the Action, the negotiations, the principal terms of the Agreement, and the propriety of approving the Agreement and its proposed distributions of settlement proceeds.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Action

On October 9, 2024, Plaintiff Roslyn Overby initiated this action against Defendant The Step2 Company, LLC as a result of Defendant's alleged failure to include bonuses and pay differentials earned by Plaintiff and other similarly situated employees in their regular rate of pay for purposes of calculating their overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.

Following the January 15, 2025 Telephonic Case Management Conference, the Court set forth a Case Management Plan, which included a first phase of discovery relating to whether there are similarly situated employees to whom notice should be issued for purposes of the collective action. (Doc. 13.) On April 16, 2025, following the period of first phase discovery, the Court held a Telephone Status Conference, during which the Parties requested that the Court refer the matter to mediation, which this Honorable Court ordered to take place between May 21, 2025 and June 13, 2025. (Doc. 14.)

### B.     Negotiation of The Agreement

Between November 2024 and June 2025, the Parties engaged in a comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. (Ex. D, Christy Declaration, ¶ 18.) This included the exchange of pay records for over 1100 employees for years 2022, 2023, and 2024, as well as extensive calculations and legal discussion and debate over Plaintiff's and the Eligible Settlement Participants' alleged potential overtime damages. (*Id.*)

3

The Parties engaged in extensive legal discussion and correspondence, which included numerous and lengthy discussions, Zoom conferences, and written communications.  (*Id*. at ¶ 19.) Between May 2025 and June 2025, the Parties engaged in extensive settlement negotiations. (*Id*. at ¶ 20.)  On June 6, 2025, the Parties attended a full day of mediation with mediator and attorney Natalie M. Stevens, who was appointed by this Court as mediator.  (*Id*.)   During the mediation, and during subsequent conversations, the Parties reached an agreement to settle the Action on the terms set forth in the attached Joint Stipulation of Settlement and Release.  (*Id*. at ¶ 21.) The Parties reached the proposed settlement in this matter after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining with the assistance of a well-respected and regarded mediator who is familiar with wage-and-hour laws.  (*Id*.)

   **C.    <u>The Agreement Terms</u>**

If approved by the Court, the Agreement will cover Plaintiff and all of the Eligible Settlement Participants who elect to participate in the Agreement by signing and returning Consent and Release Forms ("Qualified Claimants").  The Eligible Settlement Participants consist of 657 additional individuals.

The Maximum Eligible Settlement Amount is One Hundred Fifty-Six Thousand Dollars ($156,000.00), which sum will cover separate payments as follows: (a) all of the Individual Payments to the Settlement Class Members; (b) Representative Plaintiff's Representative Payment; and (c) Class Counsel's attorneys' fees and expenses.

One Hundred Thousand Nine Hundred and Sixty-Nine Dollars ($100,969.00) will be divided into Individual Payments to Plaintiff and Eligible Settlement Participants ("Class Members").  The Individual Payments will be calculated proportionally on each Class Member's alleged overtime damages during the Calculation Period.  A minimum payment of $20 will be paid to any individual who is owed less than $20.  Any Individual Payments to Eligible Settlement

Participants who do not execute and return Consent and Release Forms will be retained by Defendant.

Fifteen Hundred Dollars ($1,500.00) will be paid to Representative Plaintiff Roslyn Overby, in addition to her Individual Payment, for her service as the Representative Plaintiff and for executing a general release of claims.  In addition, $52,000.00 will be paid to Class Counsel for attorneys' fees and $1,531.00 in out-of-pocket costs incurred in this litigation and in administering the Notice.

In exchange, the Action will be dismissed with prejudice, and the Class Members will release Defendant from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act, for the Released Period.

To inform Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement of Lawsuit, with an attached Consent and Release Form.  The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by Class Counsel.  The Eligible Settlement Participants who sign and return Consent Forms will participate in the Settlement and their claims will be released.

III.    **THE PROPRIETY OF APPROVAL**

The proposed Agreement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Class Counsel Chastity L. Christy, and as explained below, Court approval is warranted on all scores.

### A.      The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.  As shown below and in the Christy Declaration (*see* Exhibit D), the standard supports approval of the Settlement.

### 1)      No Indicia of Fraud or Collusion Exists

The Parties' Counsel each have extensive experience litigating claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, including claims for unpaid hours worked and overtime compensation violations.  The Agreement was achieved only after more than eight (8)

months of arms-length and good faith discussions, meetings, and negotiations between the Parties, with the assistance of a qualified and well-respected attorney/mediator.  As such, there is no indicia of fraud or collusion.

### 2)    The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here.  Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA.  Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period.  In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA.

The Parties have already litigated this matter actively and heavily for eight (8) months.  If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. (Ex. D, ¶ 32.)  The Parties would be required to engage in extensive briefing regarding: (1) whether notice would be issued to the class; (2) whether Defendant's actions were willful; ((3) Rule 23 Class Certification; and (4) summary judgment.  (*Id.*)  Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties and the potential for up to 658 class members in the litigation.  (*Id.* at ¶ 33.)  There is no question that this case would continue to be litigated for years, including through possible appeals.  (*Id.*)  The Agreement, on the other hand, provides substantial relief to Representative Plaintiff and the

Eligible Settlement Participants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.

### 3)  Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement.  Relevant information was exchanged, including the exchange of over 1100 employees' pay records for 2022-2024 and heavy analysis of the potential alleged overtime damages with respect to the claims alleged in the lawsuit.  (Ex. D, ¶ 18.)  Class Counsel obtained and reviewed detailed payroll data relating to Plaintiff and the Eligible Settlement Participants, and other employees who are not included in this Settlement because it was determined that they are owed nothing.  (*Id*. at ¶ 23.)  Furthermore, throughout mediation and settlement discussions, Defendant provided additional data relating to all potential Settlement Participants.  (*Id*.)  The legal issues in the case have been thoroughly researched and vehemently argued by counsel for the Parties. (*Id*. at ¶ 24.)    In addition, Class Counsel obtained investigation notes and declarations from Representative Plaintiff.  (*Id*. at ¶ 23.)  All aspects of the dispute are well-understood, and were vehemently argued, by both sides for the past eight (8) months.  (*Id*. at ¶¶ 23-24.)

### 4)  The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial.  Plaintiff's claims are based on disputed issues of fact and law and Plaintiff's success at trial is far from guaranteed.  In sum, although Plaintiff asserts that the collective and class claims are meritorious, the action certainly is not without risk.  This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

The number of individuals who could have received Notice of this lawsuit continued to dwindle by the day with the statute of limitations running.  (Ex. D at ¶ 31.)  There was no guarantee that this Honorable Court would have ordered the Notice be issued to individuals whom Plaintiff claims are similarly situated to her.  (*Id*.)  Defendant has argued extensively that its non-exempt manufacturing/production employees are not all similarly situated to Plaintiff.  (*Id*.)

Additionally, Defendant argued that sufficient payments were made in 2024 for any errors that occurred during the 2024 year, and thus it had limited any liability for 2024.

Plaintiff risked this Court not permitting the issuance of Notice, which would preclude Eligible Settlement Participants from being given the opportunity to opt-in to this litigation. (*Id*. at ¶ 34.)  Under the terms of the Settlement, 657 individuals who may not have been given an opportunity to participate in the litigation will be given an opportunity to participate in the Settlement.  (*Id*.)  Additionally, since there is no current tolling of the statute of limitations in this matter, the claims of all Eligible Settlement Participants were diminishing daily, and some of them could have expired entirely before Notice was even issued.  (*Id*.)  The Settlement permits former and current non-exempt manufacturing/production employees of The Step2 Company, LLC employed in the State of Ohio who were paid any type of bonus or pay differential beyond their standard hourly rate at any time between January 1, 2023 and November 14, 2024, but for whom Defendant did not include the bonus(es) or pay differential(s) in the regular rate of pay for purposes of overtime compensation and whom are allegedly still owed overtime compensation and/or

liquidated damages, to participate in obtaining additional overtime compensation and/or liquidated damages.  (*Id*.)  As such, the claims of Eligible Settlement Participants are no longer at risk if this Court approves the Settlement.  (*Id*.)

Even if Plaintiff succeeded on the merits of her claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  (*Id*. at ¶ 35.)  Even if Plaintiff was to succeed on the merits, there is the possibility that this Court or a jury would find that she and other similarly situated employees were entitled to less overtime compensation than was obtained in this Settlement.  (*Id*.)  This Court or a jury could also find that Defendant did not act willfully, and thus a two (2) year statute of limitations would apply.  (*Id*.)  The Settlement permits recovery with a Calculation Period between January 1, 2023 and November 14, 2024 for Eligible Settlement Participants.  Without this Court ordering that tolling will apply, as of the date of this filing, the statute of limitations for two years would only go back to July 16, 2023.  Finally, a jury could find that Defendant has a good faith defense, and thus no liquidated damages would not be awarded.  (*Id*.)  All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id*.)

As such, Plaintiff's risks were extensive had litigation continued. (*Id*. at ¶ 36.)   Moreover, Eligible Settlement Participants' risks were even more extensive as there was no guarantee that they would even be permitted to receive Notice of this lawsuit. (*Id*.)

### 5) Counsel and Class Representative Favor The Agreement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement."  *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).  Here, Class Counsel believes the settlement is fair, reasonable, and adequate.  (*See* Ex. D, ¶ 40.)  Class Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their

clients in negotiating the settlement.  (*See* Exhibit D.)  Representative Plaintiff has been fully informed and involved in the settlement process, and agrees to the Settlement.  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6)      The Reaction of Absent Class Members

The absence of Class Member objections indicates that the Class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, there are no objections by class members.  Each Class Member has the option of opting into this matter or not.  The Eligible Settlement Participants are not bound by the settlement unless they affirmatively opt-in and return the Consent and Release Form.  As such, any members who choose not to participate are free to do so without taking any action on their part.

### 7)      Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions."  *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).  The settlement ends complex litigation that has been pending over eight (8) months and provides substantial relief to Plaintiff and Eligible Settlement Participants and avoids protracted, costly litigation.  *See Brotherton*, 141 F. Supp. 2d at 905-06.  The terms of the settlement are equitable and provide a reasonable resolution of the action.  As detailed above, the risks of continued litigation were significant.  Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of Plaintiffs and Eligible Settlement Participants.  In fact, chances are significant that the damages would be less due to the statute of limitations running each day.  Further, rulings by this Court or

a verdict by a jury could result in the dismissal of certain claims and/or less of a recovery for Plaintiff and Eligible Settlement Participants if this Court or a jury were to rule in favor of Defendant on certain disputed issues of fact and law. Given the risks involved in continued litigations, as well as the costs, attorney time, and Court time that would be expended with continued litigation, this settlement is in the public interest.

**B.    The Settlement Distributions Are Fair, Reasonable and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Representative Plaintiff and Eligible Settlement Participants.

As shown above, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (See Exhibit D.) The expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming. (*Id.* at ¶ 52.) The Parties have engaged in substantial discovery and investigation prior to and during the negotiations, and the issues are well understood by both sides. (*Id.* at ¶ 23.) The outcome is uncertain for Plaintiff and Eligible Settlement Participants, and the risks of continued litigation are evident for both sides. (*Id.* at ¶ 52.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff.

All Individual Payments will be calculated proportionally on each Class Member's alleged overtime damages during the Calculation Period. The Calculation Period for Eligible Settle Participants shall be the period between January 1, 2023 and November 14, 2024. (*Id.* at ¶ 35.)

If approved by the Court, the Proposed Settlement will provide adequate payments to the Class Members for alleged unpaid overtime compensation.

In 2024, Defendant made back overtime compensation payments to certain employees who are included in the Class.  (*Id*. at ¶ 37.)  Plaintiff's Counsel calculated that Plaintiff and the Eligible Settlement Participants are still owed $38,459.49 in overtime compensation for year 2023 and $3,538.97 in overtime compensation for year 2024.  (*Id*. While Defendant made payments to employees in 2024, there remained unpaid liquidated damages with respect to certain Class Members who were paid overtime compensation for 2024. (*Id*.) As such, Plaintiff's counsel calculated that Class Members had $38,459.49 in liquidated damages in 2023 and $15,714.00 in additional liquidated damages in 2024. (*Id*.) Thus, Plaintiff and Class Members were still owed $41,998.46 in overtime compensation and $54,173.49 in liquidated damages, for a total of $96,171.95 in damages, during the Calculation Period.  (*Id*.)

Pursuant to the Agreement, One Hundred Thousand Nine Hundred and Sixty-Nine Dollars ($100,969.00) of the Maximum Eligible Settlement Amount will be available to Plaintiff and 657 Eligible Settlement Participants, *after* attorneys' fees and costs, the out-of-pocket cost of settlement administration, and a service award to Representative Plaintiff. (*Id*. at ¶ 38.)

Pursuant to the Agreement, each Eligible Settlement Participant who participates in the settlement will receive over 100% of their overtime compensation and liquidated damages for the period of time between January 1, 2023 and November 14, 2024.  Moreover, any individual who is owed less than $20 will be paid a minimum payment of $20. (*Id*. at ¶ 39.)

Accordingly, the settlement proceeds are fair, reasonable and adequate.

## C.    **The Requested Service Award Should Be Approved.**

The Settlement contemplates providing a $1,500.00 Service Award to Representative Plaintiff Roslyn Overby.  Service awards to a representative plaintiff recognizing the value of his

or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Class Counsel Chastity Christy's Declaration (*see* Exhibit D) establishes that the proposed Service Award is proper and reasonable. (*Id*. at ¶ 42.) Representative Plaintiff's services were extensive and effective. (*Id*.) She provided extensive factual information to Class Counsel and faithfully engaged in numerous and extensive calls, meetings, and other communications with Class Counsel over the course of ten (10) months. (*Id*.) Moreover, she

subjected herself to the responsibilities of serving as a named Plaintiff in a lawsuit against her former employer.  (*Id*.)

The requested payment is proportional to service payments awarded to plaintiffs in other FLSA actions.  *See Grayer, et al. v. Kennametal Inc.,* N.D. Ohio Case No. 1:16-cv-01382 (Boyko, C, Nov. 27, 2019)(awarding $20,000 to each representative plaintiff in total settlement of $1,812,500.00); *Whitlock v. Sevier Cnty., Tennessee*, No. 3:18-CV-233, 2020 WL 12894415, at *2 (E.D. Tenn. Dec. 21, 2020)($20,000 service payment in $900,000 settlement); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award in $452,380.00 settlement); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to each class representative); *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2023 WL 2399056, at *3 (S.D. Ohio Feb. 21, 2023)($7,500.00 in service awards to each representative plaintiff in $300,000 settlement); *O'Bryant v. ABC Phones of N. Carolina, Inc*., No. 2:19-CV-02378, 2020 WL 4493157, at *3 (W.D. Tenn. Aug. 4, 2020)($10,000 service awards given to each representative plaintiff in $1,715,888 settlement); *Salinas v. U.S. Xpress Enterprises, Inc*., No. 1:13-CV-245, 2018 WL 1475610, at *1 (E.D. Tenn. Mar. 26, 2018)($10,000 service award in $2,200,000 settlement); *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in $2,825,000 settlement.)

### D.  Class Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure

enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).  In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

In Ohio, the preferred method is to award a reasonable percentage of the fund.  *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted).   The Court in *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) noted:

> An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See, e.g., Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritze*r, 2012 WL 1945144, at *9–10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)).

In the instant action, Plaintiff requests that the Court award fees in the amount of one-third of the Maximum Settlement Amount.   "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[3] The Ohio practice

---

[3]     *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms*

is in accord with the practice throughout the Sixth Circuit and nationwide.[4]

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs

---

*Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

[4] In *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007), the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

17

strongly in favor of the reasonableness of the requested fee.

As stated extensively above, the risks to Plaintiff and Eligible Settlement Participants were significant.  Instead of the risks of continued litigation, the Individual Settlement Payments provide Class Members with a full recovery of their overtime compensation and liquidated damages for the period of time between January 1, 2024 and November 14, 2024, *after* the attorneys' fees and costs. (*Id*. at ¶ 39.) The attorneys' fees requested are reasonable in light of the benefit achieved for Class Members as they will receive over 100% of their overtime compensation and liquidated damages independent of the payment of attorneys' fees and costs.

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm.  The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages.  Measured against that standard, the settlement in the present Settlement is comparable.  The allocation to Class Members represents over 100% of their overtime compensation and liquidated damages, *after* deduction of the service award to Plaintiff, attorneys' fees, and litigation reimbursements to Counsel.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiff's counsel took on this

matter to represent Plaintiff and Eligible Settlement Participants in their overtime compensation claims against Defendant and actively litigated for eight (8) months against experienced Defense Counsel. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

Plaintiff's Counsel undertook the representation on a purely contingent-fee basis. (Ex. D, ¶ 46.) Thus, Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case – that the investment of substantial attorney time and resources would be lost. *Id.* Counsel should be compensated for this risk. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. (Ex. D at ¶ 47.) At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiff and Eligible Settlement Participants were at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here, particularly since Class Members will receive a full recovery under the FLSA under the terms of this Settlement.

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). The parties faced complex motion practice on collective treatment, preclusion issues, dismissal of claims, and summary judgment.

As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."  Manual for Complex Litigation (4th) § 14.121.

Plaintiff's Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses.  (*See* Exhibit D.)  Plaintiffs' Counsel has worked diligently in representing Representative Plaintiff and Eligible Settlement Participants with respect to the claims and settlement of this matter. Prior to filing the Lawsuit, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant.  (Ex. D at ¶ 23.) Plaintiff's Counsel reviewed and analyzed pay records for Plaintiff and all manufacturing/production employees who received bonuses and/or shift differentials between 2022 and 2024, and performed significant calculations over the course of the eight (8) months the Parties have been litigating and attempting to resolve this matter.  (*Id.*)

During the pendency of this case, it was contentiously litigated, as this Court is aware,  The Parties engaged in substantial discovery, and it was anticipated that they would engage in even further significant motion practice and discovery as discussed above.

The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiff's Counsel has incurred expenses in the amount of $435.00 prior to the Settlement in prosecuting these claims, and will incur $1,096.00 in out-of-pocket costs associated with printing and mailing the Notice to 657 Eligible Settlement Participants.  (*Id.* at ¶ 44.)  All expenses were incurred during the course of the litigation and/or will be incurred in administering the Notice.  (*Id.*)

The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses

that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

IV.    **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that this Court approve the Agreement by entering the proposed Order of Dismissal with Prejudice and Approving Settlement attached as Exhibit C.


Respectfully submitted,

| | |
|---|---|
| *s/ Chastity L. Christy* | */s/*Nancy M. Barnes |
| Chastity L. Christy (0076977) | Nancy M. Barnes (0074744) |
| Anthony J. Lazzaro (0077692) | Brittany A. Mallow (0100928) |
| The Lazzaro Firm, LLC | **THOMPSON HINE LLP** |
| The Heritage Bldg., Suite 250 | 3600 Key Center |
| 34555 Chagrin Boulevard | 127 Public Square |
| Moreland Hills, Ohio 44022 | Cleveland, Ohio 44114 |
| Telephone: 216-696-5000 | Telephone: (216) 566-5578 |
| Facsimile: 216-696-7005 | Facsimile: (216) 566-5800 |
| chastity@lazzarolawfirm.com | Nancy.Barnes@ThompsonHine.com |
| anthony@lazzarolawfirm.com | Brittany.Mallow@ThompsonHine.com |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |


**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

 /s/ Chastity L. Christy
One of the Attorneys for Plaintiff